JOHN H. PAGE *v.* E. P. NEAL & Co.

**Bills and Notes—Parol Release of Obligor—Evidence Must be Clear.**

An obligor in a note may be released by parol, and the fact may be established by parol evidence, but such evidence should be clear, satisfactory and to the point, and if it does not come up to this standard it may be outweighed by the conduct and admissions of the party.

APPEAL FROM ALLEN CIRCUIT COURT.

October 30, 1871.

OPINION BY JUDGE PETERS:

Early in the year 1857, appellant sold to appellee and Uriah Porter a large and valuable estate in lands, slaves, stock, crops, etc., all valued at $83,333.35 for which sum they executed theier joint not payable the 1st of January, 1877, and at the same time executed twenty notes to appellant for five thousand dollars each one falling due the first day of January, 1858, and one on the first day of each January successively until, and including the 1st of January, 1877; the notes for $5,000 each, being for the interest on the principal debt.

The interest notes were paid up to, and including the year 1867 by Porter. This suit was brought by E. P. Neal, one of the obligors in said notes in 1868 against Page and Porter, to inforce an alleged contract on the part of Page to release and discharge him from the obligation, in consideration that he, Neal, who was a joint-purchaser of the property with Porter, would sell and convey all his interest in said property to Porter which Page desired that he should do and he alleges that in consideration of the promise by appellant to release him as aforesaid he did sell, and convey all his interest in the whole estate purchased of appellant to Porter on the 28th of October, 1858, except a slave named Aaron, whom Porter gave up to him to make the conveyance.

The court below granted the relief sought, and Page prosecutes this appeal.

The deed from Neal and wife to Porter for all of Neal's interest in the estate is exhibited and the consideration for said conveyance as therein recited in the sale and delivery of the slave Aaron valued by the parties at one thousand dollars. No other consideration is expressed in the deed, and appellant declares that on that day he had sold and thereby conveyed and released to Porter all right, title and claim he had to the property conveyed to them by J. H. Page and after that, viz, on the 27th of January, 1859, Porter executed an obligation to Neal with Joseph W. Hester, Sebastian Hester and Luther Porter as his sureties, in which it is stated that Porter and Neal had dissolved the partnership existing between them in the purchase of the Page property, the said Porter having agreed to take all of said

property, and to pay the stipulated price therefor with the interest accruing thereon, and Porter and his sureties undertake to indemnify and save harmless said Neal from the payment of said sums or any part thereof.

Appellant denies that he ever made any promise, agreement or contract to release Neal from his obligation to pay said notes.

The only evidence that there ever was any direct communication between Page and Neal is that of U. Porter. He states in response to a question asked him by Neal, that he cannot say that Page particularly urged him to buy out Neal, but he says he advised him to do so, assigning reasons therefor, and that about the time Neal and himself were on the trade, and before it was completed Mr. Page did agree to release Mr. Neal from all liability to himself he and Neal traded, that Judge Loving was to write the release, and that he would go to Bowling Green and get him to do it. He then says, "I told Neal myself that Page had agreed to release him, and it is my recollection, Page did *too*, though I can't say for certain about Page telling him so soon after this information was received by Neal that Page would release him from all liability to him (Page) if myself and Neal traded; he made me a deed for the property.

"I cannot say whether or not he was influenced to make the transfer by this agreement of Page, but he made the agreement shortly afterwards."

This deposition of U. Porter was taken the 6th day of May, 1870, about 16 months after he had filed his answer in the same suit, in which he stated that the only consideration in fact, and the only one expressed in the deed made to this defendant by plaintiff was the negro man Aaron valued at $1,000. Said deed speaks for itself. This defendant does not know, and cannot state what promise, or agreement said Page may have with plaintiff E. P. Neal in regard to such release to him and brother. If, however, the allegation in regard thereto made by plaintiffs be true, and they are released from all liability to said Page on account of their suretyship to this defendant, as they are, then this defendant has to say, their action against him is wanton, malicious, and iniquitous.

Stark proves that in a conversation with him Page told him that he had released Neal from all responsibility or liability to him.

D. L. Porter proves that in August or September, 1858, he heard a conversation between U. Porter and Page, in which Page told Porter if he would buy out Neal he would release him. Neal was not present at this conversation, nor does it appear that the witness ever informed him of it. The evidence of these three witnesses is all that was admitted by the court below, proving any promises or agreements on the part of Page to release Neal.

On the other hand, appellant E. O. Neal in the two suits on two of the interest notes, one in the Warren Circuit Court, the other in the Louisville Chancery Court, against him and Porter, not only failed to plead, and rely on the alleged agreement of Page to release him from all obligation to pay any part of said debt, but placed his defense in both suits on wholly different, and much more uncertain, and unreliable grounds, if the release in fact had an existence, and of which, if there was such, he was well apprised when his answers were filled in the two cases referred to as he was when he filed his several petitions in this case.

But it is strange, and singularly impressive that appellant did not at once and without delay when he was sued in the Warren Circuit Court, which seems to have been the first one brought then set up this asserted release in a separate answer, independent of Porter whose interest was antagonistic to his, and not trust his defense to Porter and his attorney, instead of pursuing that course, which seems to be the only one a prudent man, attentive to his own interest would have taken, he according to his own testimony rested quietly on such defense as Porter might make. And in his answer in the suit in the Louisville Chancery Court sworn to by himself on the 19th of February, 1869, so far from relying upon and setting up any release as to bar a recovery against him, he, after claiming a credit for the value placed on the slaves in the contract, and a proportional deduction on the interest notes because of the amendments to the constitution of the United States, whereby the slaves were emancipated, he says, "The defendants (meaning himself and Porter) are entitled to have said sums referring to the interest on the estimated value of the slaves, which had been paid on the interest notes which had previously matured, and been paid, ap-

plied as payments upon interest due upon the principal sum for which defendants are yet bound, etc." How he could be still bound if this theory of a release be true, or by what infatuation he was induced to swear to such language in the answer to a petition by which a judgment was sought on one of the very notes from the payment of which he claims now to be released, is wholly unexplained, for he then must have known as much about it as he ever did. He says that the release was a consideration for his deed to Porter on the 28th of October, 1858. But as to the affect of which counsel insists the court is mistaken as it was not acknowledged until January, 1859. We are certainly not mistaken as to its date, and the grantors declare that they did "this day" the day of the date of the deed conveyed, etc.," in consideration of the sale and delivery to them of the slave Aaron, which certainly indicates that it took effect the day of its date. In that deed it is not stated that the release from Page to him formed any part of the consideration therefor nor that any such release was made and in his answer in the suit in the Warren Circuit Court by Page's assignee against him and Porter, his admissions of his obligations to pay said notes after crediting them by the interest on the value of the slaves are even stronger than those in the other suit, from the affect which he cannot escape for the reason that the answer was prepared by Porter. The consequences to him for such negligence is almost overwhelming. Besides if Page had released him it was wholly unnecessary that he should have acquired and that Porter should have executed the bond of indemnity to him with surety on the ——day of January, 1859, and the fact that he took the bond is inconsistent with the theory that Page ever had released him. U. Porter is the only witness who proves that Page had agreed to release Neal from said notes, and in less than a year and a half before he gave the deposition relied on, he swore to an answer, in which he stated he did not know and could not state that Page ever made any promise or agreement to release Neal.

Stark only proves that he heard Page say he had released Neal from the notes in the fall of 1858. This statement was made over ten years after the conversation occurred in which he says he heard Page make this statement. And D. L. Porter proves that in August or September, 1858, he heard Page say

he would release Neal. This evidence we deem wholly insufficient to establish the alleged release, contradicted and weakened as it is by other potent and imposing facts.

We do not deny that an obligor in a note may be released by parol, or that a release may be established by parol evidence; but such parol evidence should be clear, satisfactory and directly to the point. The evidence in this case does not come up to that standard and is in our judgment outweighed by the conduct and admission of Neal, inconsistent with the fact that any such release was made.

Wherefore the judgment against Page is reversed, and the cause is remanded with directions to dismiss the petition as to him.

*Barrett & Roberts, James, Leslie & Botts, for appellant.*
*Mulligan, Rodes, Pirtle & Caruth, for appellee..*